# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:19-cv-00039-FDW

| | |
|---|---|
| AJANAKU MURDOCK, | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) **ORDER** |
| FNU WILLIAMS, et al., | ) |
| Defendants. | ) |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint [Doc. 1], filed under 42 U.S.C. § 1983. See 28 U.S.C. § 1915(a).

On April 17, 2019, the Court entered an order waiving the initial filing fee and directing monthly payments to be made from Plaintiff's prison account. [Doc. 6]. Thus, Plaintiff is proceeding in forma pauperis.

## I. BACKGROUND

Pro se Plaintiff Ajanaku Murdock, a North Carolina prisoner currently incarcerated at Alexander Correctional Institution ("Alexander") filed this action on January 28, 2019, pursuant to 42 U.S.C. § 1983. Plaintiff as named the following as Defendants: (1) FNU Williams, identified as a Disciplinary Hearing Officer (DHO) at Lanesboro Correctional Institution ("Lanesboro"); (2) FNU Horne, identified as an Assistant Unit Officer at Lanesboro; (3) the Disciplinary Appellate Committee of the N.C. Department of Public Safety ("DPS"); (4) FNU Mitchell, identified as the Superintendent of Lanesboro; and (5) the Facility Classification Committee (FCC) of Lanseboro. Plaintiff alleges that his Fourteenth Amendment due process rights were violated because he

received a punishment of six-months' solitary confinement for an alleged assault on a female guard that Plaintiff contends he did not commit.

In support of his claims, Plaintiff alleges that after he accidentally bumped into a female guard, the guard falsely accused the Plaintiff of grabbing her buttocks, "while whispering and/or telling her 'don't panic.'" [Doc. 1 at 2]. Plaintiff further alleges that he was improperly charged with a class A-11 infraction, which is assault on staff that will produce injury along with the intent to commit a sexual act. Plaintiff alleges that an A-11 infraction "carries a security risk, along with automatic 6 months solitary confinement." [Doc. 1 at 9]. Plaintiff contends he "never tried to commit any sexual act," but "did over 7 months in the hole entirely behind this offense which grossly affected me in countless way's [*sic*]." [Id.]. Plaintiff alleges that Defendant FNU Williams refused to drop the charge to a B-20, refused to allow Plaintiff "to view the tape which proves the guard was lying in her statement." Plaintiff also alleges that having the charge has given him the status of having institutional violence points "which hinders [him] from ANY promotion to medium custody facility." [Id.]. Plaintiff alleges that Defendant Williams refused to listen to Plaintiff's evidence, was not impartial, and had charged other inmates with a B-20 offense for the same alleged infarction. [Id. at 10]. As to Defendant FNU Horne, Plaintiff alleges that he directed Sergeant Lambert, the investigating officer, to charge Plaintiff with an A-11 offense rather than a B-20. [Id. at 2]. As to Defendant FNU Mitchell, Plaintiff alleges that Plaintiff notified Defendant Mitchell regarding what occurred, that Defendant Mitchell refused to take any action, to listen to Plaintiff's arguments regarding policy, or to explain why Plaintiff was singled out for an offense he did not commit among other inmates who had actually committed the offense but received lower charges and punishments. [Id. at 8]. Plaintiff further alleges that at the time of the "bogus"

2

offense, Plaintiff had been infraction free for two years and his good time credit was taken as a result of this offense. [Id. at 10].

As for the Disciplinary Hearing Committee, Plaintiff alleges that "while citing policy, proving [Plaintiff's] innocence, they still upheld frivolous charge and punishment after waiting months to decide my case." [Id. at 2]. As for Defendant FCC, Plaintiff alleges, "they approved and recommended me to get 6 months in segregation despite the lack of evidence. They didn't inspect the footage or investigate ANY aspect of the case." [Id. at 8]. Plaintiff also alleges that Defendant FCC refused acknowledge how another inmate who was actually guilty of having committed the same offense against the female officer was ultimately "let go" after being initially charged with an A-11 offense. [Id. at 8].

Plaintiff alleges that Defendants violated his due process rights because Plaintiff suffered "atypical and significant hardship" and deprivation of liberty." [Id. at 3]. Plaintiff claims that he was "mentally and emotionally" injured as a result of Defendants' conduct, that he was unable to attend his sister's funeral due to his control status, and that his reputation has been negatively affected. [Id. at 3].

As relief, Plaintiff requests monetary damages and injunctive relief, including medium custody status and restoration of good time credits lost as a result of his punishment. [Doc. 1 at 5].

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, § 1915A requires an initial review of a "complaint in a civil action in which a prisoner seeks redress

from a governmental entity or officer or employee of a governmental entity," and the court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief. In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989).

### III.  DISCUSSION

Here, taking Plaintiff's allegations as true and construing all inferences liberally in his favor, the Court finds that this matter survives initial review under 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A as to Plaintiff's claims against Defendants FNU Williams, FNU Horne, and FNU Mitchell.

As for Defendants Disciplinary Hearing Committee and FCC, these are not distinct legal entities capable of being sued, nor are they "persons" within the meaning of 42 U.S.C. § 1983. See Monell v. Dep't. of Soc. Servs., 436 U.S. 658, 688 & n.55 (1978) (noting that, for purposes of Section 1983 action, a "person" includes individuals and "bodies politic and corporate"); Fed. R. Civ. P. 17(b). These Defendants will, therefore, be dismissed. Should Plaintiff timely discover the identity of any individual members of the Disciplinary Hearing Committee or the FCC that he believes violated his constitutional rights in relation to the subject matter of Plaintiff's Complaint, he may timely move to add them as additional defendants.

### IV.  CONCLUSION

In sum, the Complaint survives initial review under 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A as to Defendants FNU Williams, FNU Horne, and FNU Mitchell. Defendants Disciplinary

Hearing Committee and Facility Classification Committee will be dismissed as Defendants in this matter.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's allegations survive initial review as to Defendant FNU Williams, Defendant FNU Horne, and Defendant FNU Mitchell, but Defendants Disciplinary Hearing Committee and Facility Classification Committee are dismissed. See 28 U.S.C. §§ 1915(e); 1915A.

2. This Court recently enacted Local Rule 4.3, which sets forth a procedure to waive service of process for current and former employees of the North Carolina Department of Public Safety ("NCDPS") in actions filed by North Carolina State prisoners. The Clerk of Court shall commence the procedure for waiver of service as set forth in Local Rule 4.3 for Defendants FNU Williams, FNU Horne, and FNU Mitchell, who are current or former employees of NCDPS.

Signed: October 29, 2019

Frank D. Whitney
Chief United States District Judge